## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

J.R.P, a minor by his guardian, JAMES    )
PENNINGTON, and J.L.P., a minor by    )
his guardian, JAMES PENNINGTON,    )
   )
         Plaintiffs,    )    Case No. 3:20-CV-11-MAB
   )
vs.    )
   )
FLORA COMMUNITY UNIT SCHOOL    )
DISTRICT, #35,    )
   )
         Defendant.    )

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on the Motion for Sanctions (Doc. 52), Motion for Leave to File an Amended Complaint (Doc. 62), and Motion to Strike Defendant's Motion to Compel Payment of Expert Witness Fees (Doc. 68) filed by Plaintiffs J.R.P. and J.L.P. ("Plaintiffs") and the Motion for Summary Judgment (Doc. 56) and Motion to Seal (Doc. 58) filed by Defendant Flora Community Unit School District #35 ("Defendant").

For the reasons explained below, the Motion for Leave to File an Amended Complaint is GRANTED, the Motion for Sanctions is DENIED, the Motion to Strike is DENIED, the Motion for Summary Judgment is DENIED without prejudice, and the Motion to Seal is DENIED.

### BACKGROUND

Plaintiffs J.R.P. and J.L.P. are twin brothers with Autism Spectrum Disorder who were minors at the time they filed the Complaint in this action on January 5, 2020 (Doc. 1). According to the Complaint, Plaintiffs were victims of severe bullying and harassment while they were students at Defendant Flora Community Unit School District #35 (*Id.*). The Complaint alleges violations of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq.* (Count I & Count II), violations of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 (Count III & Count IV), violations of the Equal Protection Clause of the Fourteenth Amendment (Count V & Count VI), and violations of the Illinois Human Rights Act, 775 ILCS 5/1, *et seq.* (Count VII & Count VIII) (*Id.*). Plaintiffs allege the severe bullying and harassment caused mental, emotional, and psychological injuries (*Id.*).

On August 28, 2021, Defendant's expert, Dr. Alexander Rose, performed independent medical evaluations ("IMEs") of Plaintiffs, at which Dr. Rose overheard a conversation between J.R.P. and his attorney. Dr. Rose incorporated the conversation into his IME report and Plaintiffs have moved for sanctions concerning Defendant's counsel's receipt of privileged attorney-client communications (Doc. 52).

On February 28, 2022, Defendant filed a Motion for Summary Judgment (Doc. 56), a Motion in Limine to Exclude Plaintiffs' Expert (Doc. 60), and a Motion to Seal Exhibits to the Motion in Limine and Motion for Summary Judgment (Doc. 58). Also on February 28, 2022, Defendant filed a Motion to Compel Payment of Expert Witness Fees with respect to Dr. Rose's deposition (Doc. 59).

On March 14, 2022, Plaintiffs filed a Motion for Leave to File an Amended Complaint (Doc. 62). On March 28, 2022, Plaintiffs filed a Motion to Strike Defendant's Motion to Compel Payment of Expert Fees (Doc. 68).

<u>ANALYSIS</u>

## I.      Motion for Leave to File an Amended Complaint

Plaintiffs filed a Motion for Leave to Amend the Complaint to add counts for willful and wanton conduct, based on evidence acquired in December 2021, and to alter the caption of the Complaint to reflect that Plaintiffs are no longer minors (Doc. 62). Over one year ago, Plaintiffs propounded written discovery requests to Defendant that sought documents pertaining to Defendant's procedure for recording, investigating, and/or resolving grievances of discrimination, bullying, and/or harassment (Doc. 69-1). Defendant responded that its Superintendent, Dr. Joel Hackney, searched for relevant policies that were in effect when Plaintiffs were students, "but they have not been maintained" (*Id.*). On December 21, 2021, Plaintiffs deposed Dr. Hackney, who testified Defendant had not maintained its bullying policies for the relevant period (Doc. 69-2). Also, Dr. Hackney testified Defendant's student handbooks did not include Defendant's bullying policy (Doc. 62-1, p. 22:2-5). Plaintiffs allege the omission violated Illinois law (Doc. 62, p. 3).

Also on December 21, 2021, Plaintiffs deposed Defendant's Principal, Amy Leonard, who testified she investigated bullying incidents against Plaintiff by utilizing a definition of "bullying" that Plaintiffs allege is not compliant with Illinois law (Doc. 62-2, p. 64:1-22) (Doc. 62, p. 3).

On December 22, 2021, Plaintiffs filed a FOIA request, seeking copies of Defendant's bullying policies covering the period during which Plaintiffs were students at Defendant (Doc. 69-3). Eventually, on December 28, 2021, Defendant produced the policies (Doc. 69-4). The bullying policies in place during the time Plaintiffs were students allegedly contain a definition of "bullying" that violates Illinois law (Doc. 69, p. 2).

Throughout the discovery process, the trial date and deadlines for discovery and dispositive motions were extended several times. The current discovery deadline passed on January 28, 2022, and the dispositive motions deadline was on February 28, 2022 (Doc. 49). On February 28, 2022, Defendant filed a Motion for Summary Judgment (Doc. 56) and on March 14, 2022, Plaintiffs filed a Motion for Leave to File an Amended Complaint (Doc. 62). The proposed Amended Complaint alters the caption of the case to reflect that Plaintiffs are no longer minors and, also, contains additional counts for willful and wanton conduct. The willful and wanton counts are based on the December 2021 deposition testimony from Dr. Hackney and Ms. Leonard and the bullying policies produced in late December 2021.

Defendant opposes leave to amend the Complaint (Doc. 64). Defendant argues that permitting an amendment two years after this action commenced will prejudice Defendant because the events in question occurred three to seven years ago. Defendant also argues Plaintiffs unduly delayed seeking leave to amend the Complaint and the amendment will require the parties to engage in substantially more discovery. Defendant notes that the Motion for Leave to Amend the Complaint was filed after the discovery

deadline passed and on the day Plaintiffs were required to file a response to Defendant's Motion for Summary Judgment.

Rule 15(a)(2) provides that courts should "freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). But when the deadline for amending the pleadings has elapsed, the court should first consider whether "good cause" for the amendment exists under Rule 16(b)(4) before considering whether justice requires leave to amend under Rule 15. *Adams v. City of Indianapolis*, 742 F.3d 720, 734 (7th Cir. 2014) (citing *Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011)). In determining whether good cause exists, "the primary consideration for district courts is the diligence of the party seeking amendment." *Alioto*, 651 F.3d at 720 (7th Cir. 2011) (citations omitted). And, in determining whether justice requires leave, district courts should consider if undue delay, bad faith, or dilatory motive existed, if the plaintiff repeatedly failed to cure deficiencies in the complaint, if the opposing party would suffer undue prejudice, and whether the amendment would be futile. *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 855 (7th Cir. 2017) (quoting *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008)). "The decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court." *Aldridge v. Forest River, Inc.*, 635 F.3d 870, 875 (7th Cir. 2011) (quoting *Brunt v. Serv. Employees Int'l Union,* 284 F.3d 715, 720 (7th Cir. 2002).

Additionally, the Seventh Circuit maintains a liberal attitude toward the amendment of pleadings, "so that cases may be decided on the merits and not on the

basis of technicalities." *Stern v. U.S. Gypsum, Inc.*, 547 F.2d 1329, 1334 (7th Cir. 1977). Generally speaking, undue delay alone is insufficient to support denial of leave to amend but may militate towards a denial when combined with unfair prejudice to the nonmoving party. *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 (7th Cir. 2004).

Here, Defendant's arguments concerning undue delay are well-taken. Plaintiffs apparently acquired all of the evidence necessary to discover the factual basis for the willful and wanton counts by December 28, 2021. However, Plaintiffs waited an additional two-and-a-half months before seeking leave to amend their Complaint. During this delay, the discovery deadline expired and Defendant filed its Motion for Summary Judgment.

But Defendant's hands are not clean, either. Any prejudice Defendant may experience because of Plaintiffs' delay is also attributable to Defendant's own inaction. Plaintiffs requested that Defendant provide the bullying policies at issue over a year ago. At the time, Defendant stated it did not have the policies. Defendant maintained this position at Dr. Hackney's deposition on December 21, 2021. Defendant eventually produced the policies on December 28, 2021, only after Plaintiffs filed a FOIA request on December 22, 2021.

In balance, the Court finds that good cause exists and that leave to amend is appropriate. The prejudice identified by Defendant, which was largely caused by Defendant's own conduct, does not outweigh the Court's liberal attitude towards amendment and the preference for the adjudication of a case on the merits. Plaintiffs'

Motion for Leave to Amend the Complaint is **GRANTED**. Defendant's Motion for Summary Judgment is **DENIED without prejudice** and with leave to refile at a later time**.**

## II.    Motion for Sanctions

The events underlying Plaintiffs' Motion for Sanctions occurred during Plaintiffs' IMEs conducted by Dr. Rose. In the summer of 2021, Plaintiffs agreed to submit to IMEs upon Defendant's request. In preparation for the IMEs, Defendant's counsel emailed Plaintiffs' counsel and stated, "the parents and the child not being evaluated can remain on the first floor at COMA coffee or on the 5th floor in the waiting room" (Doc. 52-1). Later, Plaintiffs' counsel emailed Defendant's counsel to inform Defendant either he or another attorney may be present at the start of the IMEs (Doc. 52-2).

On the day of the IMEs, Plaintiffs' counsel, Plaintiffs, and Plaintiffs' father ultimately chose to wait for the evaluations in the fifth-floor waiting room, with the door shut.[1] When Dr. Rose approached the waiting room, he overheard J.R.P. speaking, and paused to listen before opening the door. Dr. Rose subsequently learned J.R.P. was communicating in the presence of his counsel (Doc. 52-4, p. 67:1-4). Dr. Rose incorporated the communications into the IME report that he authored:

> When I went to the (5th Floor) waiting room to meet the two brothers, I paused for a moment to listen before opening the door and making my presence known as is my well-trained clinical habit. What I heard was a young man's voice verbally going through, sharing, and/or rehearsing aloud a narrative of negative events that had occurred at his prior school

---

[1] Although neither party addresses this fact, Dr. Rose's report and deposition testimony clarify the door was closed. *See* Doc. 52-3 ("I paused for a moment to listen ***before opening the door***") ("When I ***opened the door*** and made my presence known, I immediately determined that the voice I heard belonged to [J.R.P.]") ("[J.R.P.] was also able to provide further information about the context ***prior to when I had opened the door***."); Doc. 54-1, p. 62-63 ("[T]he gist of what I was hearing was [J.R.P.'s] voice or a voice that I didn't identify as [J.R.P.'s] voice ***until the door was opened***…") (emphases added).

and which are relevant to this case. When I opened the door and made my presence known, I immediately determined that the voice I heard belonged to [J.R.P.]. I already readily recognized the presence of [J.L.P.] as well as their father. There was another man in the room who I was not expecting and subsequently introduced himself as the attorney for the family on this relevant case. While I did not say anything explicitly, I was and am concerned about the atypical presence of an evaluatee's legal counsel immediately prior to an independent evaluation, which was only compounded by the verbal rehearsing of a narrative of events relevant to the present case and in the presence of said counsel. I believe that at least one effect of counsel's presence may be the initially very rehearsed nature of [J.R.P.]'s narrative as at first, he was not responding to my questions directly but was instead perseverating on and switching among several major narrative events.

(Doc. 52-3, p. 2-3).

During his deposition, Dr. Rose testified he did not get informed consent to listen to J.R.P.'s conversation with his attorney through the door (Doc. 52-4, 65:1-4). Dr. Rose also testified that he informed Defendant's counsel that he overheard the conversation (*Id.* at p. 68:4-22, 74:19-75:6). However, Defendant's counsel never told Dr. Rose to omit the conversation from the IME report (*Id.* at p. 75:7-23, 77:1-6).

Plaintiffs argue J.R.P.'s statements in the waiting room constitute privileged attorney-client communications and that Illinois Supreme Court Rule of Professional Conduct 4.4(b) obligated Defendant's counsel to notify Plaintiffs of the inadvertent receipt of the communications. Plaintiffs seek sanctions against Defendant and its counsel, including striking Dr. Rose's report, precluding Dr. Rose from testifying at trial, striking Defendant's pleadings, rendering a default judgment against Defendant, and ordering Defendant and/or Defendant's counsel to pay any and all expenses incurred by Plaintiffs in bringing the motion (Doc. 52, p. 10).

As the party invoking attorney-client privilege, Plaintiffs bear the burden of establishing all of the essential elements of the privilege. *United States v. Lawless*, 709 F.2d 486, 487 (7th Cir. 1983). Privilege is established:

> (1) Where legal advice of any kind is sought; (2) from a professional legal adviser in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his instance permanently protected; (7) from disclosure by himself or by the legal adviser; (8) except the protection be waived.

*Id.*

Here, Defendant argues J.R.P.'s communication is not privileged because he was merely stating facts to his attorney, which are not protected attorney-client communications. Further, Defendant argues that the mere presence of Plaintiffs' attorney does not establish the communications were for the purpose of seeking legal advice.

While it is true that a client cannot refuse to disclose a relevant fact merely because he incorporated a statement of the fact into a communication with his attorney, "[a] fact is one thing and a communication concerning that fact is an entirely different thing." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). The "carve-out to the attorney-client privilege for underlying facts does not erode the protection afforded to the communications relaying those facts. Thus, while the facts themselves are not protected by the privilege, *the communications of facts between an attorney and client are protected if transmitted for the purpose of obtaining legal advice*." *Toyo Tire & Rubber Co., Ltd. v. Atturo Tire Corp.*, 2016 WL 3125004, at *2 (N.D. Ill. June 3, 2016) (internal alterations omitted) (emphasis in original).

Here, J.R.P. is not claiming privilege over the facts that he transmitted to his attorney—he is claiming privilege over the communication that contained those facts. Dr. Rose's speculative analysis of the communications in his report is, itself, proof that the communication of facts between a client and his attorney takes on additional meaning that is distinct from the disclosure of facts in other unprivileged contexts.  If Defendant is correct that such communications are not protected by attorney-client privilege, "the exception for underlying facts would swallow the rule protecting attorney-client communications. The vast majority of communications between attorneys and clients contain some mixture of fact and legal opinion." *Id.*

Also, Plaintiffs have established J.R.P. was communicating with his attorney for the purpose of obtaining legal advice. The attorney-client privilege "extends only to communications between a client and a professional legal advisor in his capacity as such." *United States v. Evans*, 113 F.3d 1457, 1463 (7th Cir. 1997). "A communication is not privileged simply because it is made by or to a person who happens to be a lawyer." *Id.* Here, J.R.P.'s statement occurred at a meeting with his attorney, moments before an IME that was requested by Defendant as part of this lawsuit, and J.R.P. was conveying facts relevant to this lawsuit. The evidence clearly establishes that counsel was present at the IMEs in his capacity as an attorney and J.R.P.'s communications were for the purpose of seeking legal advice.

Next, Defendant points out that J.R.P.'s statements to his counsel took place in a public location and were spoken loud enough for Dr. Rose to overhear. Defendant seems to suggest that the attorney-client privilege was either waived or not applicable in this

instance because the communication was not made in confidence. These issues are closely related.

The Northern District of Illinois has opined, "[E]ven inadvertent communication to third parties, such as bystanders or eavesdroppers, destroys [attorney-client] privilege, at least where the eavesdropping is not surreptitious and the attorney and client have made little effort to insure that they are not overheard." *Suburban Sew 'N Sweep, Inc. v. Swiss-Bernina, Inc.*, 91 F.R.D. 254, 258 (N.D. Ill. Aug. 24, 1981). For instance, courts within the Seventh Circuit have found that incarcerated clients who speak to their attorneys on a phone line that they knew or should have known was recorded waives privilege. *See Pursely v. City of Rockford*, 2020 WL 1433827, at *4 (N.D. Ill. March 24, 2020); *see also United States v. Madoch*, 149 F.3d 596, 602 (7th Cir. 1998) (telephone conversation between defendant and spouse over a jailhouse phone not protected by marital privilege).

However, the parties do not cite, and the Court has not found, any Seventh Circuit case that squarely addresses the issue at hand, *i.e.*, the inadvertent disclosure of attorney-client communications to an eavesdropping third party who was not openly present for the communications.[2] The Restatement (Third) of the Law Governing Lawyers § 71 provides helpful guidance. The Restatement provides that "the presence of a

---

[2] While the Court could not find analogous caselaw from the Seventh Circuit or its District Courts, a Utah District Court addressed a similar situation in *Reid v. Womack*, 2014 WL 4094465, at *4 (D. Utah Aug. 18, 2014). There, the Court found privilege was not waived for an attorney-client conversation that was overheard in the waiting room of another attorney's office before a deposition. *Id.* The court reasoned that the attorney and client spoke in the only space reasonably available and talked in hushed tones, the conversation took place before a deposition where such a conversation was clearly to be expected and necessary, and the attorney and client were unaware that anyone else was in the waiting room. *Id.*

surreptitious eavesdropper does not destroy confidentiality." *Id.* The Restatement outlines the following illustration:

> Client and Lawyer confer in Client's office about a legal matter. Client realizes that occupants of nearby offices can normally hear the sound of voices coming from Client's office but reasonably supposes they cannot intelligibly detect individual words. An occupant of an adjoining office secretly records the conference between Client and Lawyer and is able to make out the contents of their communications. Even if it violates no law in the jurisdiction, the secret recording ordinarily would not be anticipated by persons wishing to confer in confidence. Accordingly, the fact that the eavesdropper overheard the Client-Lawyer communications does not impair their confidential status.

Based on the authority cited above, the circumstances surrounding the case here do not preclude or waive attorney-client privilege. J.R.P.'s communications with his attorney took place behind a closed door and not in a crowded room or other space openly occupied by third parties. Also, Dr. Rose's presence was not obvious—instead, he "paused for a moment to listen before opening the door and making [his] presence known." Even if J.R.P. was talking loudly enough for Dr. Rose to hear the conversation while standing outside the door, J.R.P. and his counsel could reasonably believe that a closed-door conversation could not be readily overheard outside. Also, J.R.P. and his counsel had a reasonable expectation that a third-party would not eavesdrop on their conversation. This type of secret eavesdropping is the type of "surreptitious" activity that distinguishes this case from those where privilege is waived.[3] *Cf. Suburban Sew 'N Sweep,*

---

[3] Dr. Rose is not an attorney and thus is not expected to understand all of the contours of the attorney-client privilege. He stated in his report that he was unaware that J.R.P. was having a discussion with his attorney. Further, the attorney-client privilege analysis is fact intensive and if the facts were different, the privilege may have been waived due to Dr. Rose's presence.

91 F.R.D. at 258 (finding inadvertent disclosure to eavesdroppers waives privilege "at least where the eavesdropping is ***not surreptitious***") (emphasis added); *Pursely*, 2020 WL 1433827, at *5 (attorney-client privilege waived where inmates were warned their phone conversations were recorded by the prison).

Defendant argues that Plaintiffs cannot successfully assert their Motion without acknowledging that their counsel was subverting the discovery of the truth at the IME. However, there is no evidence that Plaintiffs' attorney counseled Plaintiffs to avoid the truth or that counsel otherwise obstructed the IMEs.  There is nothing atypical about an attorney counseling their clients through each stage of litigation and Defendant has no evidence of impropriety in this instance.

Also, Defendant contends that finding privilege in this instance would "set forth a roadmap for proceeding to subvert *any expert from ever testifying* on behalf of Defendant" (Doc. 54, p. 7) (emphasis in original). Defendant argues Plaintiffs' counsel need only show up to an IME, discuss the IME with Plaintiffs, and then argue the physician heard the conversation or violated privilege (*Id.*). As set out above, the privilege analysis is not so simple. "Determining the application of the attorney-client privilege requires a careful analysis, not the invocation of a rule of easy and automatic application." *BankDirect Capital Finance, LLC v. Capital Premium Finance, Inc.*, 326 F.R.D. 176, 183 (N.D. Ill. Aug. 3, 2018). Defendant's argument fails to take into account the pivotal fact that Dr. Rose's report admits to listening in on a conversation that was taking place *behind a closed door*. That conversation behind the closed door was one between Plaintiffs and their attorney. Dr. Rose went on to devote an entire analysis of the conversation in his report. The

Court's decision does not open the door for abusive litigation tactics. If anything, it prevents them.

Although Dr. Rose's IME report contains privileged attorney-client communications, sanctions are not an appropriate remedy. Plaintiffs rely on the Court's inherent authority to impose sanctions and Federal Rule of Civil Procedure 37(b), which permits sanctions for the violation of a discovery order. However, Rule 37(b) is not appropriately invoked here. Neither Defendant nor its counsel violated a discovery order or engaged in egregious litigation practices that would obviate the need for an order prohibiting their conduct. *Cf. REP MCR Realty, L.L.C. v. Lynch*, 363 F. Supp. 2d 984, 998 (N.D. Ill. 2005) (finding no order was necessary to impose sanctions under Rule 37 because there is a presumption that all litigants understand that "fabricating evidence and committing perjury is conduct of the sort that is absolutely unacceptable."). "Moreover, sanctions imposed pursuant to the court's inherent authority must be premised on a finding that the culpable party willfully abused the judicial process or otherwise conducted the litigation in bad faith." *Ebmeyer v. Brock*, 11 F.4th 537, 546 (7th Cir. 2021).

Here, Plaintiffs do not clearly articulate whether they seek sanctions against Defendant or its counsel. The Motion refers to "Defendant's violation" and the Court's powers to sanction "a litigant," but also refers to the "contempt on the part of Defendant and its counsel" (Doc. 52, p. 7, 8, & 10). To the extent Plaintiffs seek sanctions against Defendant, there is no evidence of Defendant's culpability with regard to Dr. Rose's encroachment on the attorney-client privilege.

Further, Plaintiffs have not established that Defendant's counsel engaged in bad faith, abusive litigation practices, or any other conduct that warrants the harsh remedy of sanctions. Plaintiffs contend Defendant's counsel violated ethical obligations by not promptly notifying Plaintiffs he was in receipt of privileged information. However, Plaintiffs have not indicated how long Defendant's counsel was aware that Dr. Rose's report contained privileged information before disclosing the report to Plaintiffs. Further, this is not the ordinary case where a party inadvertently disclosed privileged information to opposing counsel, opposing counsel lied in wait with privileged information, or counsel solicited the disclosure of privileged information. *Cf. Harris Davis Rebar, LLC v. Structural Iron Workers Local Union No. 1, Pension Trust Fund*, 2019 WL 447622 (N.D. Ill. Feb. 5, 2019) (imposing sanctions for violations of Rule 4.4(b) where counsel surreptitiously and "actively acquired" privileged documents from a third-party and did not produce the documents for four years); *Raymond v. Spirit AeroSystems Holdings, Inc.*, 2017 WL 2831485 (D. Kan. June 30, 2017), *objections overruled*, 2017 WL 3895012 (D. Kan. Sept. 6, 2017) (granting motion for sanctions for violations of Rule 4.4(b) where counsel was "lying in wait" for two years with privileged documents); *Chamberlain Group, Inc. v. Lear Corp.*, 270 F.R.D. 392 (N.D. Ill. Nov. 8, 2010) (granting sanctions under Rule 4.4(b) where counsel failed to notify opposing counsel of privileged documents received from an anonymous source until over one year later). The privileged information here was disclosed by a third-party expert in an IME report that was disclosed to both parties, and there is no evidence Defendant's counsel was responsible for Dr. Rose's conduct.

For the reasons outlined above, sanctions do not appear to be the appropriate remedy and Plaintiff's motion is therefore **DENIED**. However, Dr. Rose's IME report clearly contains privileged attorney-client communications, which calls into question the admissibility of his report and his ability to act as a witness. While the Court is inclined to strike Dr. Rose's report and preclude him from testifying at trial, the Court will withhold ruling on the appropriate remedy until the parties have had an opportunity to fully brief the Court on this topic.

### III. Motion to Strike Defendant's Motion to Compel Payment of Expert Witness Fees

Defendant filed a Motion to Compel Payment of Expert Witness Fees under Federal Rule of Civil Procedure 26(b)(4), to compel Plaintiffs to compensate Dr. Rose for expenses related to his deposition. Under Rule 26(b)(4), a party may depose any person who has been identified as an expert whose opinions may be presented at trial. "Unless manifest injustice would result, the court must require the party seeking discovery" to "pay the expert a reasonable fee for time responding to discovery[.]" FED. R. CIV. P. 26(b)(4)(E).

Plaintiffs deposed Dr. Rose on November 8, 2021. The following day, Dr. Rose sent Plaintiffs an invoice for $6,725 for costs related to his preparation for and attendance at the deposition (Doc. 59-1). The breakdown of the invoice is as follows:

Review of Research Literature (1.75 hours): $525

Discussion of Research Literature on 11/7 (2.25): $675

Discussion of Deposition on 11/7 (1.75 hours): $525

Independent Deposition Prep (7.5 hours): $2,250

Deposition on 11/8 (5.5 hours): $2,750

(*Id.*).

According to Defendant, the parties held a Zoom meeting on February 1, 2022 to discuss Dr. Rose's invoice (Doc. 59, p. 2). On February 15, 2022, Plaintiffs' counsel emailed Defendant's counsel and stated he would either pay the invoice by the end of the week or "definitively" state Plaintiffs' position so that Defendant can "decide how to proceed" (Doc. 59-4). Defendant states it never received payment or an explanation as to why the invoice has not been paid (Doc. 59, p. 2). Defendant filed its Motion to Compel on February 28, 2022 (Doc. 59).

In response, Plaintiffs explain they are willing to pay for Dr. Rose's time spent at the deposition, but they contend they are not responsible for Dr. Rose's time spent preparing for the deposition (Doc. 68). Plaintiffs filed a Motion to Strike the Motion to Compel on the basis that Defendant failed to comply with the Court's Case Management Procedures by not filing a joint report of the parties concerning the dispute (Doc. 68).

The Court's Case Management Procedures encourage the parties to resolve discovery disputes informally without the Court's intervention. Case Management Procedures, Judge Mark A. Beatty, p. 9 (available at https://www.ilsd.uscourts.gov/documents/Beatty.pdf). However, in the event the parties cannot reach a resolution, "the parties may seek the Court's assistance" and "should submit a one-page joint statement of the issues." *Id.* While Defendant should have technically filed a joint-report, the issues are already before the Court and a joint-

report would have little utility in this instance. Thus, Plaintiffs' Motion to Strike Defendant's Motion to Compel Expert Witness Fee is **DENIED**.

Although the Motion to Strike is denied, the Court believes the parties are in the best position to resolve their dispute. The circumstances under which preparation expenses can be recouped under Rule 26(b) is not definitively settled, but District Courts within the Seventh Circuit have recently trended toward awarding fees for preparation. *See Ridgeway v. Wexford Health Sources, Inc.*, 2021 WL 1545975 (S.D. Ill. Apr. 20, 2021). If preparation time can be recovered in this case, the Court must still assess whether certain expenses are reasonable under Rule 26(b). *See, e.g., Heilman v. Burke*, 2021 WL 4256082 (C.D. Ill. Sept. 17, 2021) (denying motion to compel fees for expert's time spent consulting with attorneys); *LK Nutrition, LLC v. Premier Research Labs, LP*, 2015 WL 4466632 (N.D. Ill. July 21, 2015) (unsupported assertions of preparation time insufficient for an award of fees). However, "judges are in an extremely poor position to determine whether a particular amount of preparation time is reasonable in any particular case. Experts are people, not machines, and different people work and think in different ways. The needs of different cases also vary widely." *Eastman v. Allstate Ins. Co.*, 2016 WL 795881, at *5 (S.D. Cal. Feb. 29, 2016).

With these principles in mind, the parties are **ORDERED** to meet and confer over their dispute concerning Dr. Rose's invoice to see if they can't resolve the issue themselves. If the parties are unable to resolve the issue, then the Court Plaintiff will need to file a response addressing the merits of Defendant's Motion to Compel. Accordingly,

the parties status report is due on or before **April 25, 2022**. Plaintiff's response, if any, is due on or before **May 2, 2022**.

### IV.   Motion to Seal

Defendant filed a Motion to Seal certain exhibits supporting its Motion for Summary Judgment and Motion in Limine (Doc. 58). The Motion for Summary Judgment was denied as moot, so Defendant's request concerning its exhibits is also **DENIED as moot**. The remaining exhibits at issue support Defendant's Motion in Limine and allegedly contain sensitive medical and academic records concerning Plaintiffs. However, the exhibits were not submitted to the Court.

Plaintiffs do not oppose the Motion to Seal (Doc. 67), but the motion must still be scrutinized against the public's presumptive right of access to materials before the Court. *See Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999) ("The judge is the primary representative of the public interest in the judicial process and is duty-bound therefore to review any request to seal the record (or part of it).").

Motions to seal are disfavored. *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010). "Documents that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality." *Id*. The Seventh Circuit has emphasized "that litigation be conducted in public to the maximum extent consistent with respecting trade secrets, the identities of undercover agents, and other facts that should be held in confidence. *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006), *abrogated on other grounds by RTP*

*LLC v. ORIX Real Estate Capital*, 827 F.3d 689, 691-92 (7th Cir. 2006). Motions to seal parts of the record should be granted "only if there is good cause" for doing so. *Citizens*, 178 F.3d at 945. This requires the movant to analyze the allegedly sensitive documents "in detail." *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 548 (7th Cir. 2002). "Motions that simply assert a conclusion without the required reasoning, however, have no prospect of success." *Id.*

Here, Defendant has not demonstrated that any of the medical or personal information warrants confidentiality. The Court has not had the opportunity to review the allegedly sensitive information because it was not submitted to the Court. Given the public's important interest, the Court is hesitant to seal documents without first examining them. But regardless, information about Plaintiffs' medical and academic histories goes to the heart of Plaintiffs' claims. Plaintiffs allege that severe harassment and bullying at school caused them mental, emotional, and psychological injuries (Doc. 1). By placing their medical conditions and academic histories at issue, the Court is skeptical that it will be able to find good cause to seal this type of information. Finally, Defendant broadly states that the exhibits contain "medical and school records of Plaintiffs J.R.P. and J.L.P. – who were minors when the alleged incidents occurred and when the referenced records were created" (Doc. 58, p. 2). Defendant then provides brief descriptions of the exhibits, such as, "contains an analysis of Plaintiff J.R.P. and J.L.P.'s medical and school records" (Doc. 58, p. 2). These are the type of "generic" statements that the Seventh Circuit has said "won't do" to justify sealing documents. *See Baxter*, 297 F.3d at 546 ("a litigant must do more than just identify a kind of information and demand

secrecy"). Defendant has not demonstrated there is an extraordinary justification for the information to be removed from the public record. Defendant's Motion to Seal is **DENIED**.

<u>CONCLUSION</u>

For the reasons set out above, Plaintiffs' Motion for Leave to File an Amended Complaint (Doc. 62) is **GRANTED**. Plaintiffs shall file the amended complaint on or before **April 22, 2022**.

Defendant's Motion for Summary Judgment (Doc. 56) is **DENIED without prejudice**. Plaintiffs' Motion for Sanctions (Doc. 52) is **DENIED**. However, in light of the Court's conclusion that the report contains privileged attorney-client communication, the Court will entertain briefing on the appropriate remedy. Each party shall file a brief on this topic on or before **May 18, 2022**.

Plaintiffs' Motion to Strike Defendant's Motion to Compel Expert Witness Fees (Doc. 68) is **DENIED**. The parties are **ORDERED** to further meet and confer over their dispute concerning Dr. Rose's invoice and **SUBMIT** a status report on or before **April 25, 2022**. If the parties cannot reach an agreement, Plaintiffs **SHALL** file their response to Defendant's Motion to Compel on or before **May 2, 2022**. Defendant's Motion to Seal (Doc. 58) is **DENIED**.

IT IS SO ORDERED.

DATED: April 18, 2022

s/Mark A. Beatty_____
**MARK A. BEATTY**
**United States Magistrate Judge**