**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

JAMES PENNINGTON JR., as guardian   )
of the Estates of JAMES R. PENNINGTON )
and JACOB PENNINGTON,               )
                                       )
               Plaintiff,             )
                                       )
     v.                          )      Case Number:  20-CV-11-MAB
                                       )
FLORA COMMUNITY UNIT SCHOOL    )
DISTRICT, #35                        )
                                       )
              Defendant.          )

**PROPOSED FIRST AMENDED COMPLAINT**

NOW COMES Plaintiff JAMES PENNINGTON JR., as guardian of the Estates of JAMES

R. PENNINGTON and JACOB PENNINGTON, by and through undersigned counsel, and for his

First Amended Complaint against Defendant FLORA COMMUNITY UNIT SCHOOL

DISTRICT, # 35, states as follows:

**INTRODCUTION**

1.     This is an action for money damages and injunctive relief brought by two brothers

with autism, James R. and Jacob Pennington ("the Brothers"), pursuant to 42 U.S.C. § 1983 and

the Fourth and Fourteenth Amendments to the United States Constitution, the Americans with

Disabilities Act, the Rehabilitation Act, and under the laws of the State of Illinois, against Flora

Community Unit School District, #35 ("Flora").

2.     As more fully described below, Flora is liable for the Brothers' severe mental

anguish which includes diagnosed PTSD as result of severe bullying and harassment the Brothers

endured while students at Flora.

3.      Flora and its agents failed to properly address the severe and pervasive bullying the

Brothers endured in part because Defendant's bullying policies in its student handbooks did not

comply with Illinois law. Even two years after the Brothers filed suit against Flora, bullying

policies that appear in some of Flora's student handbooks remained non-compliant with Illinois

law. Given Defendant's ongoing violations of Illinois law, it is warranted for the Court to enjoin

Flora to fully comply with 105 ILCS 5/27-23.7 - Bully Prevention.

4.      Under Illinois law, Flora's "policy on bullying" must include the definition of

"bullying" included in 105 ILCS 5/27-23.7 Bully Prevention ("the Act").

5.      Under the Act "bullying" means:

> [A]ny severe or pervasive physical or verbal act or conduct, including
> communications made in writing or electronically, directed toward a student
> or students that has or can be reasonably predicted to have the effect of one
> or more of the following:
>
>> (1) place the student or students in reasonable fear of harm to the
>> student's or students' person or property;
>> (2) causing a substantially detrimental effect on the student's or
>> students' physical or mental health;
>> (3) substantially interfering with the student's or students' academic
>> performance; or
>> (4) substantially interfering with the student's or students' ability to
>> participate in or benefit from the services, activities, or privileges
>> provided by a school.
>
> Bullying, as defined in this subsection (b), may take various forms,
> including without limitation one or more of the following: harassment,
> threats, intimidation, stalking, physical violence, sexual harassment, sexual
> violence, theft, public humiliation, destruction of property, or retaliation for
> asserting or alleging an act of bullying. This list is meant to be illustrative
> and non-exhaustive.

(105 ILCS 5/27-23.7) (definition of "cyber-bullying" omitted).

6.      The Act's definition of "bullying" does not require physical or verbal acts be

repeated, nor does it require there be a pattern of bullying against the same victim(s).

7.      Flora is in violation of Illinois law because for years it maintained a bullying policy in its junior high school student handbook without the definition of "bullying" as provided by the Act. Also, for years, Flora's bullying policy improperly included a definition of "bullying" that required conduct be repeated or there be a bullying pattern against the same victim(s) ("Illegal Policy") (Exhibit A – 2017 Flora Junior High Handbook).

8.      Flora also improperly trained its employees on what constitutes "bullying" under Illinois law. Illinois law does not require negative conduct be repeated, yet Flora's training documents defined bullying as "[a] person is being bullied when he/she is exposed to, *repeatedly and over time, to negative actions on the party of one or more persons*." (Exhibit B – Training Documents) (emphasis added). Illinois law does not require the negative actions to be repeated overtime; a one-time incident may constitute bullying under Illinois law.

9.      Flora's improper training and Illegal Policy caused its agents, including Amy Leonard, its junior high school principal and chief bullying investigator, to not properly address clear and egregious incidents of bullying under Illinois law directed at Plaintiffs.

10.     On one occasion, a Flora junior high school student *stabbed* James R. in the arm with a pencil with such force the pencil lodged in James R.'s arm and required surgical intervention to remove it.

11.     Principal Leonard, who admittedly is charged with investigating bullying incidents at the junior high, testified that *she did not consider the pencil stabbing incident bullying.* (Exhibit C – Leonard Deposition).

12.     In particular, Principal Leonard testified that:

**23      Q.  Did you think that this incident rose**

**24   to the level of bullying?**

25    A.  According to the definition of

1  bullying, I did not.

**2    Q.  What is the definition of bullying?**

3    A.  Consistent multiple times of a student

4  picking on or being mean to another student in a

5  consistent manner.

**6    Q.  And you don't think this fits that**

**7  definition because why?**

8    A.  Because it was a one-time occurrence,

9  to my knowledge.

**10    Q.  It's a one-time occurrence that Caden**

**11  Borcherding was messing with James Pennington?**

12    A.  That was a one-time occurrence that

13  Caden did to James.

**14    Q.  Okay.  So you're saying, though, for**

**15  it to be bullying someone would have to be**

**16  stabbed multiple times, like the same pattern**

**17  repeatedly?**

18    A.  No.  I'm saying that would be

19  consistent mean behavior.

(*Id.* at 24:23 to 25:19).

13.    Principal Leonard believed bullying must involve repeated conduct because she relied on the Illegal Policy on "bullying" contained in Flora's junior high school's handbook.

2      **Q.  So it would be your job to investigate**

3  **bullying incidents?**

4      A.  Yes.

5      **Q.  And when you were investigating**

6  **bullying incidents during the time period of this**

7  **lawsuit which definition of bullying were you**

8  **using?**

9      A.  I use the one in our handbook.

10     **Q.  In the handbook?**

11     A.  Yes.

12     **Q.  Okay.  So when you were doing**

13  **investigation of bullying for these couple of**

14  **years, in your mind it had to be repeated for it**

15  **to count?**

16     A.  Yes.

(*Id.* at 69:2 to 69:16).

14.    After being presented with the correct definition of "bullying" under Illinois law,

Principal Leonard testified that:

6      **Q.  Okay.  So the State of Illinois**

7  **doesn't require repeated conduct for it to be**

8  **bullying, according to this.  Does it?**

9      A.  No.

(Id. at 64:6 to 64:9).

15.    Principal Leonard further testified that the Illegal Policy contained in the handbook she relied on did not fully comply with Illinois law.

**17    Q.  So if the definition of bullying is**

**18    different in the policy that's in the handbook as**

**19    the policy -- as this law, would that mean that**

**20    the policy in the handbook does not comply with**

**21    the law?**

22    A.  Not entirely.

(*Id.* at 64:17 to 64:22).

16.    Tragically, the above failures are only a few of a series of failures by Defendant and its agents that caused the Brothers to unnecessarily suffer extreme mental anguish, including diagnosed PTSD.

17.    Principal Leonard not knowing the applicable and lawful definition of "bullying" demonstrates the systematic failures and training deficiencies by Defendant which led her to conclude a childing being stabbed by a pencil did not constitute bullying even though it clearly does under Illinois law.

18.    School officials like Superintendent Hackney and Principal Leonard are charged with promoting and maintaining a safe and civil school environment for students like James R. and Jacob. To do so, Defendant and its agents must follow Illinois law and their own policies. Here, Defendant admittedly failed to do both which caused James and Jacob to suffer extreme physical and emotional damages.

**PARTIES**

19.    Plaintiff James Pennington Jr., as guardian of the Estates of James R. Pennington and Jacob Pennington, is a citizen of the United States and resident of the Southern District of Illinois.

20.    James R. Pennington is a disabled citizen of the United States and resident of the Southern District of Illinois. Medical professionals have diagnosed James with autism spectrum disorder and PTSD.

21.    Jacob Pennington is a disabled citizen of the United States and resident of the Southern District of Illinois. Medical professionals have diagnosed Jacob with autism spectrum disorder and PTSD.

22.    Defendant Flora Community Unit School District #35 is a public-school district in the state of Illinois. Its principal office is in the Southern District of Illinois. Upon information and belief, Defendant receives federal funding.

## JURISDICTION AND VENUE

23.    This Court has jurisdiction over Plaintiff's claims arising under the Constitution or laws of the United States pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 1983. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. Plaintiff has satisfied applicable administrative remedy requirements and are not currently claiming any denial of Free Appropriate Public Education ("FAPE") or seeking such relief.

## FACTS

24.    James R. Pennington and Jacob Pennington are twin brothers diagnosed with autism spectrum disorder and PTSD.

25.    From 2015 continuing until January 13, 2019, the Brothers were victims of a severe and pervasive campaign of verbal and physical bullying and harassment by other students at

Defendant's school and Defendant failed to properly address the situation due to its failures in following Illinois law and its own policies.

26.     One reason the Brothers were targeted for bullying was because they have autism. As a result, they are perceived--and treated--by other students and by Defendant's employees as "different."

27.     At all relevant times, Defendant had lawful disciplinary authority over the perpetrators of the bullying because they were students on Defendant's property and the harassment occurred on school property during school hours. Therefore, Defendant exercised substantial control over the circumstances which led to the harassment and/or the conditions where the harassment was perpetrated.

28.     Despite having actual knowledge that the Brothers were being bullied and of the significant harmful effects which it was having upon them, Defendant and its agents failed to properly address the situation to prevent further bullying against them. In some instances, Defendant's agents bullied the Brothers.

29.     As previously noted, Defendant and its agents, including Principal Leonard, failed to properly investigate and address acts of bullying against Plaintiffs in part because the junior high school handbook included the Illegal Policy which contained a definition of "bullying" not compliant with Illinois law.

30.     Principal Leonard admitted she relied on the Illegal Policy when concluding incidents like the pencil stabbing incident against James did not constitute bullying.

31.     Principal Leonard also admitted the Illegal Policy did not "entirely comply" with Illinois law. This is the same Illegal Policy she relied on to conclude a child being stabbed with a pencil in the arm did not constitute bullying because it was a "one-time occurrence."

32.    To be clear, the definition of "bullying" under the Act allows for one-time occurrences if:

> [A]ny *severe or pervasive physical or verbal act or conduct*, including communications made in writing or electronically, directed toward a student or students that has or can be reasonably predicted to have the effect of one or more of the following:
>
>> (1) place the student or students in reasonable fear of harm to the student's or students' person or property;
>> *(2) causing a substantially detrimental effect on the student's or students' physical or mental health*;
>> (3) substantially interfering with the student's or students' academic performance; or
>> (4) substantially interfering with the student's or students' ability to participate in or benefit from the services, activities, or privileges provided by a school.

(105 ILCS 5/27-23.7) (Emphasis Added).

33.    James R. being stabbed by a pencil while in school is a severe or pervasive physical act that at a minimum caused a substantial detrimental effect on his physical and mental health. Even Principal Leonard agreed stabbing someone with a pencil is assault. (Exhibit C at 45:3 to 45:5).

34.    Defendant's widespread custom or practice of allowing bullying in its schools has sent a message that students who harass their peers will not face serious consequences. This has fostered a culture of passivity, even tolerance, on the part of school staff which leads students to engage in such because they know they can get away with it.

35.    Principal Leonard, the individual charged with investigating incidents of bullying at the junior high school, did not even know the correct definition of "bullying" under Illinois law. Such ineptness, especially when it causes children to suffer physical and mental anguish, is beyond reckless.

36.    Defendant actively trained its employees improperly on what constitutes bullying under Illinois law.

37.    Due to Defendant and its agents' ineptness, the Brothers experienced bullying on a constant, continuing, daily basis. A non-exhaustive list of examples of the bullying include:

- On or around April 2, 2018, students who constantly bullied James and Jacob falsely accused James of urinating in a trashcan. Despite no credible evidence of doing so and his vehement denials, administrators had police take James, a minor with autism and intellectual disabilities, to the police station for questioning without his parents being present. This gaslighting caused James so much distress he was admitted to a hospital with suicidal ideations. To date, James still believes Defendant is trying to "put him in jail." In comparison, the student, who admitted to stabbing James in the arm with a pencil, was not taken by police to the police station for questioning. Coincidentally, that other student's mother works as a teacher for Defendant.

- In October 2017, school surveillance video captured a group of male students violently throwing shoes at James while he sat helplessly.

- As previously noted, in April 2017, a student stabbed James in the arm with a pencil with such force it lodged in his arm and required James to go to the ER to have it surgically removed. Prior to transferring James to the ER, Principal Leonard testified that she questioned James about the incident *as the pencil protruded from him arm*. Ten days after the pencil stabbing incident, James received a detention for yelling "I want to throw fire on everyone and kill everyone." Principal Leonard testified that she remembers James receiving a detention for making the comment but does not remember why he said it.

- Multiple students bullied James and Jacob with such frequency and intensity before PE class that the brothers became too terrified to change before class and were often late to avoid their tormentors. The students would often call James and Jacobs "faggots" and tell them they must "suck each other's dicks." Rather than disciplining the students for bullying, the teacher would discipline James and Jacob for tardiness.

- Multiple students bullied James and Jacob by frequently beating on the doors of bathroom stalls when both were trying to go to the bathroom. To date, both James and Jacob require someone to stand guard outside a bathroom when either is inside one because they fear someone will beat on the door.

- One way Jacob's disability manifests itself is by Jacob having an irrational fear of getting splinters from sitting in wooden chairs. On one occasion, Jacob made the reasonable request to switch chairs from a wood chair to a metal one and the

Defendant's teacher told him "You're not going to use your autism as an excuse around here, boy."

38.    In an effort to stop the bullying, James Pennington Jr. reported the bullying numerous times to district officials, including Superintendent Joel Hackney and Principal Amy Leonard. Defendant had actual knowledge of the bullying but failed to properly act.

39.    As a result of Defendant's failures, the Brothers' trauma has caused severe mental, emotional, and psychological injuries which are likely permanent. They have also experienced pain and suffering and have incurred medical expenses.

## COUNT I – WILLFUL AND WANTON CONDUCT

40.    Plaintiff hereby incorporates by reference the allegations set forth in the foregoing paragraphs of this First Amended Complaint as if they were set forth fully herein.

41.    As an Illinois School District Defendant had a duty to follow 105 ILCS 5/27-23.7 Bully Prevention ("the Act").

42.    The Act's first paragraph states in part: "The General Assembly finds that a safe and civil school environment is necessary for students to learn and achieve and that bullying causes physical, psychological, and emotional harm to students and interferes with students' ability to learn and participate in school activities." 105 ILCS 5/27-23.7(a).

43.    The Act defines a "policy on bullying" as a bullying prevention policy that meets certain criteria. Id at 23.7(b). The criterion includes the following:

- (1) Includes the bullying definition provided in this Section;

- (3) Incudes procedures for promptly reporting bullying, including, but not limited to, identifying providing the school e-mail address (if applicable) and school telephone number for the staff person or persons for receiving such reports and a procedure for anonymous reporting;

- (10) Is posted on the school district's . . . existing Internet website, is included in the student handbook . . .;

44. Defendant breached its duty by violating the Act to the following ways:

- It violated 23.7(b)(1) by not including the bullying definition provided in the Act in all literature reciting its bullying policy. Principal Leonard admitted in her deposition that the junior high school's handbook during relevant times did not include the bullying definition provided by the Act.

- It violated 23.7(b)(3) by not including the school email address and school phone number in all literature reciting its bullying policy. Principal Leonard and Superintendent Hackney admitted in their depositions that the junior high school's handbook during relevant times did not include all information required by 23.7(b)(3).

- It violated 23.7(b)(10) by not including its entire bullying policy in its student handbooks during relevant times. Superintendent Hackney admitted in his deposition that during relevant times the Defendant's entire bullying policy was not included in all student handbooks.

45. Defendant actively trained its employees using a definition of "bullying" that is not complaint with Illinois law. Defendant's improper training caused its employees to not properly investigate clear acts of bullying against James R.

46. Defendant violation of the Act is willful, wanton, or reckless conduct.

47. As a direct and proximate result of Defendant's actions and omissions, James R. has suffered and continue to suffer damages.

48. Additionally, Defendant had a duty during relevant times to follow its bullying policy.

49. Defendant breached its duty in the following ways:

- During relevant times Defendant did not utilize its official definition of "bullying" when investigating incidents of bullying. Principal Leonard testified that she utilized the nonofficial definition of "bullying" contained within the junior high school student handbook when investigating incidents of bullying against James R. and Jacob. Contrary to its official definition of bullying reflected in its bullying policy, the definition contained within the student handbook stated "bullying" required deliberate, hurtful behavior that is repeated over a period of time towards the same person. No such repeated behavior is required by its official bullying policy.

- During relevant times, Defendant improperly trained its employees on what constitutes "bullying" under Illinois law.

50.    Defendant's violation of its own official policy on bullying is willful, wanton, or reckless conduct.

51.    As a direct and proximate result of Defendant's actions and omissions, James R. suffered and continues to suffer damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant and for James R. Pennington, awarding compensatory damages, enjoining Defendant to comply entirely with 105 ILCS 5/27-23.7 - Bully Prevention, and for any further relief this Court deems just.

## COUNT II – WILLFUL AND WANTON CONDUCT

52.    Plaintiff hereby incorporates by reference the allegations set forth in the foregoing paragraphs of this First Amended Complaint as if they were set forth fully herein.

53.    As an Illinois School District Defendant had a duty to follow 105 ILCS 5/27-23.7 Bully Prevention ("the Act").

54.    The Act's first paragraph states in part: "The General Assembly finds that a safe and civil school environment is necessary for students to learn and achieve and that bullying causes physical, psychological, and emotional harm to students and interferes with students' ability to learn and participate in school activities." 105 ILCS 5/27-23.7(a).

55.    The Act defines a "policy on bullying" as a bullying prevention policy that meets certain criteria. *Id* at 23.7(b). The criterion includes the following:

- (1) Includes the bullying definition provided in this Section;

- (3) Incudes procedures for promptly reporting bullying, including, but not limited to, identifying providing the school e-mail address (if applicable) and school

telephone number for the staff person or persons for receiving such reports and a procedure for anonymous reporting;

- (10) Is posted on the school district's . . . existing Internet website, is included in the student handbook . . .;

56.    Defendant breached its duty by violating the Act to the following ways:

- It violated 23.7(b)(1) by not including the bullying definition provided in the Act in all literature reciting its bullying policy. Principal Leonard admitted in her deposition that the junior high school's handbook during relevant times did not include the bullying definition provided by the Act.

- It violated 23.7(b)(3) by not including the school email address and school phone number in all literature reciting its bullying policy. Principal Leonard and Superintendent Hackney admitted in their depositions that the junior high school's handbook during relevant times did not include all information required by 23.7(b)(3).

- It violated 23.7(b)(10) by not including its entire bullying policy in its student handbooks during relevant times. Superintendent Hackney admitted in his deposition that during relevant times the Defendant's entire bullying policy was not included in all student handbooks.

57.    Defendant actively trained its employees using a definition of "bullying" that is not complaint with Illinois law. Defendant's improper training caused its employees to not properly investigate clear acts of bullying against James R.

58.    Defendant violation of the Act is willful, wanton, or reckless conduct.

59.    As a direct and proximate result of Defendant's actions and omissions, Jacob has suffered and continue to suffer damages.

60.    Additionally, Defendant had a duty during relevant times to follow its bullying policy.

61.    Defendant breach its duty in the following ways:

- During relevant times Defendant did not utilize its official definition of "bullying" when investigating incidents of bullying. Principal Leonard testified that she utilized the nonofficial definition of "bullying" contained within the junior high school student handbook when investigating incidents of bullying against James R.

and Jacob. Contrary to its official definition of bullying reflected in its bullying policy, the definition contained within the student handbook stated "bullying" required deliberate, hurtful behavior that is repeated over a period of time towards the same person. No such repeated behavior is required by its official bullying policy.

- During relevant times, Defendant improperly trained its employees on what constitutes "bullying" under Illinois law.

62.    Defendant's violation of its own official policy on bullying is willful, wanton, or reckless conduct.

63.    As a direct and proximate result of Defendant's actions and omissions, Jacob suffered and continues to suffer damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant and for Jacob Pennington, awarding compensatory damages, enjoining Defendant to comply entirely with 105 ILCS 5/27-23.7 - Bully Prevention, and for any further relief this Court deems just.

## COUNT III – VIOLATION OF SECTION 504 OF THE REHABILITATION ACT

64.    Plaintiff hereby incorporates by reference the allegations set forth in the foregoing paragraphs of this First Amended Complaint as if they were set forth fully herein.

65.    This claim is brought pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq. ("Section 504") and its implementing regulations, 34 C.F.R. § 104 et seq.

66.    Section 504 guarantees James Jr. the right to participate, along with nondisabled students, in academic, nonacademic and extracurricular activities (e.g., lunch, recess, recreational activities) and services to the maximum extent appropriate to her needs. 34 C.F.R. § 104.34(a), (b).

67.    James R.'s condition substantially limits one or more major life activities. He is an "individual with a disability" as defined by 29 U.S.C. § 705.

68.    Defendant receives federal financial assistance.

69.    Defendant operates a "program or activity" as defined by 29 U.S.C. § 794(b); namely, provision of educational services.

70.    Defendant operated their program or activity on the basis of generalizations, assumptions, prejudices, or stereotypes about James' disability and how it affects her.

71.    Students' bullying of James R. constitutes harassment on the basis of his disability which interfered with his right to receive an education in an environment free from discrimination.

72.    Defendant knew, or were deliberately indifferent to knowing, that James R. was being harassed on the basis of his disability yet failed to take proper steps to investigate or otherwise determine what occurred.

73.    Defendant knew, or were deliberately indifferent to knowing, that James R. was being subjected to discriminatory harassment which created a hostile environment sufficiently serious to interfere with or limit James R.'s ability to participate in or benefit from Defendant's programs or activities.

74.    Despite this knowledge, Defendant failed to take prompt and effective steps to end the harassment, eliminate the hostile environment, prevent its recurrence and remedy its effects.

75.    Defendant discriminated against James Jr. solely by reason of his disability in violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 et seq. Specifically, Defendant subjected him to a hostile educational environment.

76.    By allowing a hostile educational environment to exist at school, Defendant discriminated against James R. because of his disability.

77.    Defendant acted with discriminatory intent or deliberate indifference toward James R.

78.     As a direct and proximate result of the Defendant's discrimination, James R. suffered mental, emotional, and psychological injuries which may be permanent. It has also caused pain, suffering, and has caused James R. and his parents to incur medical expenses.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant and for James R. Pennington, awarding compensatory damages, and for any further relief this Court deems just.

### COUNT IV – VIOLATION OF SECTION 504 OF THE REHABILITATION ACT

79.     Plaintiff hereby incorporates by reference the allegations set forth in the foregoing paragraphs of this First Amended Complaint as if they were set forth fully herein.

80.     This claim is brought pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq. ("Section 504") and its implementing regulations, 34 C.F.R. § 104 et seq.

81.     Section 504 guarantees Jacob the right to participate, along with nondisabled students, in academic, nonacademic, and extracurricular activities (e.g., lunch, recess, recreational activities) and services to the maximum extent appropriate to her needs. 34 C.F.R. § 104.34(a), (b).

82.     Jacob's condition substantially limits one or more major life activities. He is an "individual with a disability" as defined by 29 U.S.C. § 705.

83.     Defendant receives federal financial assistance.

84.     Defendant operates a "program or activity" as defined by 29 U.S.C. § 794(b); namely, provision of educational services.

85.     Defendant operated their program or activity on the basis of generalizations, assumptions, prejudices or stereotypes about Jacob's disability and how it affects him.

86.     Students' bullying of Jacob constitutes harassment on the basis of his disability,

which interfered with his right to receive an education in an environment free from discrimination

87.    Defendant knew, or were deliberately indifferent to knowing, that Jacob was being harassed on the basis of his disability yet failed to take proper steps to investigate or otherwise determine what occurred.

88.    Defendant knew, or were deliberately indifferent to knowing, that Jacob was being subjected to discriminatory harassment which created a hostile environment sufficiently serious to interfere with or limit Jacob's ability to participate in or benefit from Defendant's programs or activities.

89.    Despite this knowledge, Defendant failed to take prompt and effective steps toend the harassment, eliminate the hostile environment, prevent its recurrence, and remedy its effects.

90.    Defendant discriminated against Jacob solely by reason of his disability in violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 et seq. Specifically, Defendant subjected him to a hostile educational environment and deprived him of the opportunity to attend school and participate in their programs or activities.

91.    By allowing a hostile educational environment to exist at school, Defendant discriminated against Jacob because of his disability.

92.    Defendant acted with discriminatory intent or deliberate indifference towards Jacob.

93.    As a direct and proximate result of the Defendant's discrimination, Jacob suffered mental, emotional, and psychological injuries which may be permanent. It has also caused pain, suffering, and has caused Jacob and his parents to incur medical expenses.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant and for Jacob Pennington, awarding compensatory damages and for any further

relief this Court deems just.

### COUNT V – VIOLATION OF AMERICANS WITH DISABILITIES ACT

94.    Plaintiff hereby incorporates by reference the allegations set forth in the foregoing paragraphs of this First Amended Complaint as if they were set forth fully herein.

95.    This claim is brought pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 and its implementing regulations, 34 C.F.R. Part 35.

96.    Defendant is a "public entity" as defined by 42 U.S.C. § 12131(1).

97.    James R. is a "qualified individual with a disability" as defined by 42 U.S.C. § 12131(2).

98.    By reason of James R.'s disability, Defendant subjected him to discrimination. Specifically, by failing to take reasonable measures to address the bullying. Defendant subjected James Jr. s to a hostile environment at school.

99.    Defendant acted with discriminatory intent or deliberate indifference towards James Jr.

100.    Defendant's actions (and inaction) violate Title II of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12132 et seq. ("ADA").

101.    As a direct and proximate result of the Defendant's discrimination, James Jr. suffered mental, emotional, and psychological injuries which may be permanent. It has also caused pain, suffering, and has caused James R. and his parents to incur medical expenses.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant and for James R. Pennington, awarding compensatory damages, and for any further relief this Court deems just.

### COUNT VI – VIOLATION OF AMERICANS WITH DISABILITIES ACT

102.    Plaintiff hereby incorporates by reference the allegations set forth in the foregoing paragraphs of this First Amended Complaint as if they were set forth fully herein.

103.    This claim is brought pursuant to Title II of the ADA, 42 U.S.C. § 12132 and its implementing regulations, 34 C.F.R. Part 35.

104.    Defendant is a "public entity" as defined by 42 U.S.C. § 12131(1).

105.    Jacob is a "qualified individual with a disability" as defined by 42 U.S.C. § 12131(2).

106.    By reason of Jacob's disability, Defendant excluded her from participation in or denied her the benefits of the services, programs or activities of a public entity or subjected Jacob to discrimination. Specifically, by failing to take reasonable measures to address the bullying, Defendant subjected Jacob to a hostile environment at school.

107.    Defendant acted with discriminatory intent or deliberate indifference towards Jacob.

108.    Defendant's actions (and inaction) violate Title II of the ADA.

109.    As a direct and proximate result of the Defendant's discrimination, Jacob suffered mental, emotional, and psychological injuries which may be permanent. It has also caused pain, suffering, and has caused Jacob and his parents to incur medical expenses.

110.    WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant and for Jacob Pennington, awarding compensatory damages, and for any further relief this Court deems just.

## COUNT VII – VIOLATION OF EQUAL PROTECTION

111.    Plaintiff hereby incorporates by reference the allegations set forth in the foregoing paragraphs of this First Amended Complaint as if they were set forth fully herein.

112.     James R. belongs to a protected class by reason of his disability. He is entitled to attend school in an environment which is not hostile; however, he was repeatedly harassed by other students, in whole or in part, because of his disability.

113.     This harassment created a hostile environment at school for James R. Defendant knew or should have known that failing to take reasonable measures to prevent James R. from being subjected to harassment violated his equal protection rights.

114.     Defendant had actual knowledge that James R. was being bullied but turned a blind eye and their failure to act in the face of such knowledge demonstrates their deliberate indifference toward James R.'s predicament.

115.     Defendant's inaction and failure to take meaningful steps to address student on student harassment in their schools represents a widespread custom or practice.

116.     There is no rational basis or legitimate state interest to justify Defendant's inaction in the face of numerous reports that James R. was being bullied.

117.     By their custom or practice of ignoring the bullying and as a result of their inaction, Defendant subjected James R. to multiple instances of discrimination because of his disability.

118.     Defendant's custom or practice of ignoring the harassment of students (particularly disabled students) in their schools is so well-settled that it amounts to a policy which is unconstitutional.

119.     As a result of their unconstitutional custom or practice, James R.'s constitutional rights were violated.

120.     Pursuant to their custom, practice, or de facto policy of ignoring student on student harassment, Defendant subjected James R. to multiple instances of discrimination because of his disability.

121.    Whether Defendant adopted a policy or engaged in a custom or practice which amounts to a policy, its inaction in the face of the ongoing, repeated and severe harassment of James R. lacks any rational relationship with a legitimate government interest.

122.    Defendant acted with discriminatory intent or deliberate indifference towards James.

123.    Nondisabled students were not subjected to the same treatment as James R.

124.    Defendant, acting under color of state law, discriminated against James R. because of his disability by allowing a hostile environment to exist at school. Such discrimination deprived James R. of the equal protection of the law in violation of the Fourteenth Amendment to the Constitution.

125.    As a direct and proximate result of the Defendant's discrimination, James R. suffered mental, emotional, and psychological injuries which may be permanent. It has also caused pain, suffering, and has caused James Jr. and his parents to incur medical expenses.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant and for James R. Pennington, awarding compensatory damages, and for any further relief this Court deems just.

## COUNT VIII – VIOLATION OF EQUAL PROTECTION

126.    Plaintiff hereby incorporates by reference the allegations set forth in the foregoing paragraphs of this First Amended Complaint as if they were set forth fully herein.

127.    Jacob belongs to a protected class by reason of his disability. He is entitled to attend school in an environment which is not hostile; however, he was repeatedly harassed by other students, in whole or in part, because of his disability.

128.    This harassment created a hostile environment at school for Jacob.

129.    Defendant knew or should have known that failing to take reasonable measures to prevent Jacob from being subjected to harassment violated his equal protection rights.

130.    Defendant had actual knowledge that Jacob was being bullied but turned a blind eye and their failure to act in the face of such knowledge demonstrates their deliberate indifference toward Jacob's predicament.

131.    Defendant's inaction and failure to take meaningful steps to address student on student harassment in their schools represents a widespread custom or practice.

132.    There is no rational basis or legitimate state interest to justify Defendant's inaction in the face of numerous reports that Jacob was being bullied.

133.    By their custom or practice of ignoring the bullying and as a result of their inaction, Defendant subjected Jacob to multiple instances of discrimination because of his disability.

134.    Defendant's custom or practice of ignoring the harassment of students (particularly disabled students) in their schools is so well-settled that it amounts to a policy which is unconstitutional.

135.    As a result of their unconstitutional custom or practice, Jacob's constitutional rights were violated.

136.    Pursuant to their custom, practice, or de facto policy of ignoring student on student harassment, Defendant subjected Jacob to multiple instances of discrimination because of his disability.

137.    Whether Defendant adopted a policy or engaged in a custom or practice which amounts to a policy, its inaction in the face of the ongoing, repeated, and severe harassment of Jacob lacks any rational relationship with a legitimate government interest.

138.    Defendant acted with discriminatory intent or deliberate indifference towards Jacob.

139.    Nondisabled students were not subjected to the same treatment as Jacob.

140.    Defendant, acting under color of state law, discriminated against Jacob because of his disability by allowing a hostile environment to exist at school. Such discrimination deprived Jacob of the equal protection of the law in violation of the Fourteenth Amendment to the Constitution.

141.    As a direct and proximate result of the Defendant's discrimination, Jacob suffered mental, emotional, and psychological injuries which may be permanent. It has also caused pain, suffering, and has caused Jacob and his parents to incur medical expenses.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant and for Jacob Pennington, awarding compensatory damages, and for any further relief this Court deems just.

## COUNT IX – VIOLATION OF ILLINOIS HUMAN RIGHTS ACT

142.    Plaintiff hereby incorporates by reference the allegations set forth in the foregoing paragraphs of this First Amended Complaint as if they were set forth fully herein.

143.    The Illinois Human Rights Act, 775 ILCS 5/1 *et seq* prohibits, *inter alia,* discrimination regarding the availability of public accommodations based on disability.

144.    James R. is an individual with a disability within the meaning of 775 ILCS 5/1-103.

145.    From 2015 and continuing until January 13, 2019, James R. was subjected to severe and pervasive bullying and harassment while a student at Defendant's school district due to his disability.

146.    School officials were aware of this and failed to take any action to stop or correct the harassment. In fact, certain teachers and administrators partook in the harassment.

147.    Plaintiff James R. filed a charge with the Illinois Office of Human Rights regarding

this conduct. A Notice of Opt Out and Right to Commence Action in Circuit Court has been entered.

148.    As a direct and proximate result of the Defendant's discrimination, James R. suffered mental, emotional, and psychological injuries which may be permanent. It has also caused pain, suffering, and has caused James R. and his parents to incur medical expenses.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant and for James R. Pennington, awarding compensatory damages, and for any further relief this Court deems just.

## COUNT X – VIOLATION OF ILLINOIS HUMAN RIGHTS ACT

149.    Plaintiff hereby incorporates by reference the allegations set forth in the foregoing paragraphs of this First Amended Complaint as if they were set forth fully herein.

150.    The Illinois Human Rights Act, 775 ILCS 5/1 *et seq* prohibits, *inter alia,* discrimination regarding the availability of public accommodations based on disability.

151.    Jacob is an individual with a disability within the meaning of 775 ILCS 5/1-103.

152.    From 2015 and continuing until January 13, 2019, Jacob was subjected to severe and pervasive bullying and harassment while a student at Defendant's school district due to his disability.

153.    School officials were aware of this and failed to take any action to stop or correct the harassment. In fact, certain teachers and administrators partook in the harassment.

154.    Plaintiff Jacob filed a charge with the Illinois Office of Human Rights regarding this conduct. A Notice of Opt Out and Right To Commence Action in Circuit Court has been entered.

155.    As a direct and proximate result of the Defendant's discrimination, Jacob suffered

mental, emotional, and psychological injuries which may be permanent. It has also caused pain, suffering, and has caused Jacob and his parents to incur medical expenses.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant and for Jacob Pennington, awarding compensatory damages, and for any further relief this Court deems just.

Respectfully submitted,

/s/ James Radcliffe_____
James E. Radcliffe, IL #6330315
LAW OFFICE OF CHRISTOPHER CUETO, LTD.
7110 West Main Street
Belleville, IL 62223
ccueto@cuetolaw.com

Lloyd M. Cueto, IL #6292629
Law Office of Lloyd M. Cueto, P.C.
7110 West Main Street
Belleville, IL 62223
cuetolm@cuetolaw.com