IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES PENNINGTON, JR., <br> as guardian of the Estates of James R. <br> Pennington and Jacob Pennington, <br><br> Plaintiff, <br><br> vs. <br><br> FLORA COMMUNITY UNIT SCHOOL <br> DISTRICT NO. 35, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) Case No. 3:20-CV-11-MAB <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on the motion to dismiss, and a separate motion to strike, Plaintiffs' First Amended Complaint filed by Defendant Flora Community Unit School District No. 35 (Doc. 76; Doc. 78). For the reasons set forth below, the motion is denied.

### BACKGROUND

James Pennington, Jr., brought this action on behalf of his two sons, James R. and Jacob, who are collectively referred to in this Order as "Plaintiffs." Mr. Pennington alleges that his sons, who both have autism spectrum disorder, were severely verbally and physically bullied and harassed by other students and sometimes staff while they were students at Flora. Mr. Pennington further alleges that district officials failed to properly address the bullying, which caused the boys severe mental anguish and led to both being

diagnosed with post-traumatic stress disorder. Mr. Pennington originally asserted claims against the School District for violations of the Rehabilitation Act ("Rehab Act"), the Americans with Disabilities Act ("ADA"), the Equal Protection Clause, and the Illinois Human Rights Act (Doc. 1). He was later permitted to amend the complaint to add claims against the School District for willful and wanton conduct (Doc. 72; Doc. 73).

The School District filed a motion to dismiss the amended complaint (Doc. 76; *see also* Doc. 77). The School District also filed a motion to strike, arguing that in the event the request to dismiss Plaintiff's claims under the Rehab Act and ADA is denied, the prayer for compensatory damages should be stricken (Doc. 78; *see also* Doc. 79). Plaintiffs filed responses in opposition to the School District's motions (Doc. 82; Doc. 86).

## PRELIMINARY MATTERS

The format of the District's motions and supporting memoranda is problematic. Looking first at the motion to strike and its corresponding memorandum, both documents are four pages long (Docs. 78, 79), which made the Court wonder if they were duplicative of one another. A closer review confirmed the Court's hunch—the two documents contain essentially the exact same information and argument, except that it is presented in numbered paragraphs in the motion and in narrative form in the memorandum, and there are slight variations in language between the two documents.

The motion to dismiss and the supporting memorandum, however, are a much different story. At first, blush, it seemed the two were also largely duplicative of one another, given that they are both about 14 pages long (Docs. 76, 77). However, a careful review of the two revealed that is not the case. The first section of both documents

regarding available damages is, indeed, almost exactly the same (*compare* Doc. 76, pp. 3–4 *with* Doc. 77, pp. 2–3). For the second section regarding the willful and wanton claims, one portion of the memorandum contains substantially the same information as the motion, but there are subtle differences in the language used (*compare* Doc. 76, pp. 5–6 *with* Doc. 77, pp. 4–5, regarding a private right of action under 105 ILL. COMP. STAT. 5/27-23.7). However, another portion of this section greatly expands on the argument made in the motion (*Compare* Doc. 77, pp. 5–7 *with* Doc. 76, pp. 5–6), while another contains argument *never even* mentioned in the motion (Doc. 77, p. 4, regarding willful and wanton conduct as a tort). For the third section regarding immunity, the first half of the argument in both documents is the same, but it is presented in a different order (*compare* Doc. 76, pp. 6–7 *with* Doc. 77, pp. 7–9). Then the motion and memorandum diverge; the motion contains argument never even made in the memorandum (*compare* Doc. 76, ¶¶35–38 *with* Doc. 77, pp. 7–10), and vice versa (*compare* Doc. 77, pp. 9–10 *with* Doc. 76, pp. 6–8). As for the final section regarding exhaustion, a large portion of both documents are the exact same, meaning they present the same information, in the same order (*compare* Doc. 76, ¶¶58–70 *with* Doc. 77, pp. 12–14). Other portions are the same but scrambled; that is, the same information is presented in both documents but in a different order (*compare* Doc. 76, ¶¶42–43, 45–47, 48–50, 55, 57 *with* Doc. 77, pp. 10–12). Finally, the motion contains a significant amount of information, rule language, argument, and/or legal citations that do not appear anywhere in the memorandum (*compare* Doc. 76, ¶¶44, 51–53, 56 *with* Doc. 77, pp. 10–14).

The current format of the School District's motions and corresponding memoranda forces the opposing party (and ultimately the Court) to scrutinize every sentence on every page to piece together the entirety of Defendant's arguments.[1] Generally speaking, when a party opts to file a motion with a separate supporting brief the actual motion, itself, is a short submission (a couple pages). It succinctly states the type of order sought (*e.g.*, an order dismissing the case) and the grounds for seeking the order (*e.g.*, because the plaintiff failed to state a claim and defendant is immunized from liability). FED. R. CIV. P. 7(b)(1). The motion *does not* contain legal argument or citations to relevant authority; that is the purpose of the accompanying memorandum. In other words, the motion outlines the arguments and the memorandum contains the substance of the arguments. The Court expects compliance with these basic formatting rules moving forward in this case.

## DISCUSSION

A motion to dismiss under Rule 12(b)(6) addresses the legal sufficiency of the plaintiff's claim for relief, not the merits of the case or whether the plaintiff will ultimately prevail. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a motion to dismiss, a complaint must contain sufficient factual matter to plausibly suggest that the plaintiff has a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v.*

---

[1] This is an endeavor the Court would normally decline to engage in, and any future motion practice that follows the same problematic format will be summarily denied.

*Twombly*, 550 U.S. 544, 570 (2007)). In deciding whether the complaint sufficiently states a claim, courts take well-pleaded allegations in the complaint as true and draw all permissible inferences in favor of the plaintiff. *E.g., Dix v. Edelman Fin. Servs., LLC*, 978 F.3d 507, 512–13 (7th Cir. 2020).

**A. CLAIMS UNDER THE REHAB ACT AND ADA – Counts 3, 4, 5, 6**

The School District argues that Counts 3 through 6 should be dismissed because Plaintiffs seek only emotional damages as relief for these claims, which are no longer recoverable in cases brought under the Rehab Act and the ADA following the Supreme Court's decision in *Cummings v. Premier Rehab Keller,* 142 S.Ct. 1562 (2022).

In *Cummings*, the Supreme Court held that emotional distress damages were not available in private actions to enforce "Spending Clause antidiscrimination statutes," which include in pertinent part, the Rehab Act. *Cummings*, 142 S.Ct. at 1576.[2] Because Title II of the ADA incorporates the remedies set forth in the Rehab Act (which, in turn, incorporates the remedies set forth in Title VI of the Civil Rights Act),[3] it therefore follows that emotional distress damages are also not available in suits brought under the ADA. *See Barnes v. Gorman*, 536 U.S. 181, 185, 189 (2002) (holding that punitive damages were

---

[2] The so-called Spending Clause anti-discrimination statutes are (1) Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, (2) Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, (3) the Rehabilitation Act, 29 U.S.C. § 794, and (4) the Affordable Care Act, 42 U.S.C. § 18116. *Cummings*, 142 S. Ct. at 1569 ("Pursuant to its authority to 'fix the terms on which it shall disburse federal money,' Congress has enacted four statutes prohibiting recipients of federal financial assistance from discriminating based on certain protected grounds.") (internal citation omitted).

[3] 42 U.S.C. § 12133; 29 U.S.C. § 794a(a)(2); 42 U.S.C. § 2000d, *et seq. See also Barnes v. Gorman*, 536 U.S. 181, 185, 189 n.3 (2002) (noting that the remedies under § 202 of the ADA, § 504 of the Rehabilitation Act, and Title VI of the Civil Rights Act are "coextensive" and "the same").

not available in private suits brought under Title VI, and therefore also not available in suits brought under Title II of the ADA or the Rehabilitation Act); *Montgomery v. D.C.*, No. CV 18-1928 (JDB), 2022 WL 1618741, at *24 (D.D.C. May 23, 2022) ("Title II of the ADA incorporates the 'remedies, procedures, and rights set forth in' the Rehabilitation Act, 42 U.S.C. § 12133; hence, if a certain category of damages is not available under Section 504, it is not available under Title II either.")[4]

Here, in Counts 3 through 6, Plaintiffs allege that, "[a]s a direct and proximate result of the Defendant's discrimination, [they] suffered mental, emotional, and psychological injuries which may be permanent. It has also caused pain, suffering, and has caused [them and their parents] to incur medical expenses." (Doc. 73, ¶¶78, 93, 101, 109). The School District contends that, based on these allegations, Plaintiffs seek only emotional damages (Doc. 76, pp. 3–4; Doc. 77, pp. 2–3). Plaintiffs, however, contend that they are "not seek[ing] 'emotional damages'" but rather seeking "compensatory damages" for "severe mental, emotional, psychological injuries" and "pain, suffering, and medical expenses." (Doc. 86, p. 4). They argue that their damages are "clearly

---

[4] Other district courts have held that ADA claims seeking emotional distress damages are subject to dismissal after *Cummings*. *See, e.g., Faller v. Two Bridges Reg'l Jail*, No. 2:21-CV-00063-GZS, 2022 WL 17260763, at *1 (D. Me. Nov. 2, 2022) ("The Court concludes that Plaintiff cannot pursue a remedy on her ADA claim that is not available under Rehabilitation Act. Thus, she is foreclosed from recovering damages for emotional distress on both claims proceeding to trial in this matter."). *See also J.P. v. Nebraska*, No. 4:22-cv-3095, 2022 WL 5254121, at *6 (D. Neb. Oct. 6, 2022) ("Although the Supreme Court did not directly address § 202 of the ADA in *Cummings*, its holding implicitly found that emotional distress damages are unavailable under that section."); *Hill v. SRS Distribution Inc.*, No. CIV 21-370-TUC-CKJ, 2022 WL 3099649, at *5 (D. Ariz. Aug. 4, 2022) (noting that "the Supreme Court recently held that damages for emotional distress are not recoverable under the Rehabilitation Act; it is therefore unlikely such damages are available under the ADA"); *Wolfe v. City of Portland*, No. 3:20-cv-1882-SI, 2022 WL 2105979, at *6 (D. Or. June 10, 2022) ("A recent decision by the Supreme Court forecloses emotional distress damages under the Rehabilitation Act and thus likely also under the ADA, for which remedies are construed coextensively with the Rehabilitation Act.").

different" than the damages sought in *Cummings* for "humiliation, frustration, and emotional distress." (*Id.*). *See Cummings*, 142 S.Ct. at 1569. They imply that their damages go above and beyond those sought in *Cummings* because Plaintiffs were diagnosed with PTSD, which "can cause physical symptoms" and is "also associated with long-term physical health conditions like diabetes and heart disease," and they incurred medical costs to treat their condition (*Id.*).

To begin with, Plaintiffs did not only request emotional damages, as the School District contends. Plaintiffs very clearly requested medical expenses, which the allegations attribute to treatment for physical injuries they suffered as a result of bullying, as well as treatment for the psychological injuries (*see, e.g.,* Doc. 73, p. 10) (alleging that James R. was stabbed in the arm with a pencil by another student and had to have it surgically removed and that James R. was hospitalized due to suicidal ideations). As the Court sees it, these are compensatory damages for economic losses, which *Cummings* did not preclude. The School District's contention that Plaintiff is only claiming emotional damages is therefore without merit.

The Court is unconvinced, however, by Plaintiffs' attempt to rebrand their request for damages for "mental, emotional, psychological injuries" and "pain and suffering" as something other emotional damages. Whether it is labeled like Plaintiffs in the instant case or labeled as "humiliation, frustration, and emotional distress," like in *Cummings*, its all the same concept. The labels are all variations of the same principal that the defendant's actions caused the plaintiff a "highly unpleasant mental reaction"—*i.e.*, emotional distress. *Emotional Distress*, BLACK'S LAW DICTIONARY (11th ed. 2019). *See also*

RESTATEMENT (SECOND) OF TORTS § 46 cmt. j ("Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea."). Additionally, Plaintiffs did not provide citations to any legal authority to support their suggestion that damages for severe emotional responses and diagnosable psychiatric conditions, as opposed to simple "humiliation" or "frustration," are recoverable (*see* Doc. 86, p. 4), and the Court has no reason to believe that is true when the Supreme Court in *Cummings* did not distinguish between degrees of emotional distress.

In conclusion, the School District's request to dismiss Plaintiffs' claims under the Rehab Act and the ADA is denied because Plaintiffs alleged that they suffered an economic loss in the form of medical expenses, and Defendant did not present any argument that this type of compensatory damages is not recoverable. However, Plaintiffs' request for "compensatory damages" for "mental, emotional, and psychological injuries" and "pain [and] suffering" is nothing more than a request for emotional damages, which is no longer permitted. Consequently, this damages request is stricken.

### B. CLAIMS FOR WILLFUL AND WANTON CONDUCT – Count 1 and 2

Counts 1 and 2 are titled "Willful and Wanton Conduct" (Doc. 73, pp. 11-15). Plaintiffs allege that the School District violated the section of the Illinois School Code titled "Bullying Prevention," 105 ILL. COMP. STAT 5/27-23.7 (hereinafter "Code" or "Bullying Prevention statute") and acted willfully, wantonly, and recklessly by using an anti-bullying policy did not comply with the Code's requirements in various respects and

because the District improperly trained its employees using a definition of "bullying" that did not match the definition set forth in the Code (*Id.* at pp. 12, 14). Plaintiffs further allege that the School District acted willfully, wantonly, and recklessly when it failed to follow its own anti-bullying policy (*Id.* at pp. 12–13, 14–15).

### 1. Right of Action Under the Bullying Prevention Statute

The School District's primary argument is that Counts 1 and 2 should be dismissed because the Bullying Prevention statute does not expressly provide a private right of action, nor should one be implied (Doc. 76, pp. 5–6; Doc. 77, pp. 3–7). In response, Plaintiffs argue that the School District is mischaracterizing their claims, and they assert that they are "proceeding with claims of willful and wanton conduct, not a private right of action for violation of the Act." (Doc. 86, p. 7; *see also id.* at pp. 5–6). Plaintiffs further argue that the School District's "violation of the Act is *a sufficiently plead*[ed] *allegation of willful and wanton conduct*" (*Id.* at p. 7) (emphasis in original).

The Court notes that Counts 1 and 2 are indeed titled, framed, and pleaded as claims for willful and wanton conduct (Doc. 73, pp. 11–15). Plaintiffs only cite to the Bullying Prevention statute as a means of demonstrating the existence of the School District's duty. It is obvious that Plaintiffs did not use the Bullying Prevention statute as the legal vehicle through which they are bringing their claims. *Cf. Jain v. Butler Sch. Dist. 53*, 303 F. Supp. 3d 672, 679 (N.D. Ill. 2018) (plaintiff alleged claims against school district for willful and wanton conduct (count 5) as well as for violation of Illinois's anti-bullying statute (count 8)). The School District did not file a reply to rebut Plaintiffs' characterization of their claims or argue that Plaintiffs' willful and wanton claims are

somehow tantamount to a claim for violation of the Bullying Prevention statute. Under these circumstances, the Court will not construe the claims as a private right of action for violation of the Bullying Prevention statute and sees no reason to evaluate whether an express or implied right of action exists under the statute. Accordingly, this portion of the School District's motion to dismiss is denied.

### 2. Viability & Sufficiency of a Claim for Willful and Wanton Conduct

The School District next argues that Counts 1 and 2 should be dismissed because willful and wanton conduct is not an independent theory of tort in Illinois (Doc. 77, p. 3). This argument is a non-starter. While there is no independent tort of willful and wanton conduct in Illinois, it is regarded as an aggravated form of negligence and can be pleaded as such by alleging the basic elements of a negligence claim—duty, breach, and causation—as well as "either a deliberate intention to harm or a conscious disregard for the plaintiff's welfare." *E.g., Jane Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Directors*, 973 N.E.2d 880, 887 (Ill. 2012).

Furthermore, the Court notes that, at times, willful and wanton misconduct is required to establish the liability of the defendant, particularly in cases where the defendant is covered by some type of immunity statute.[5] *See generally, Sidwell v. Griggsville Cmty. Unit Sch. Dist. No. 4*, 588 N.E.2d 1185, 1187 (1992) (reviewing Illinois Supreme Court precedent holding that section 24–24 and 34–84a of the Illinois School Code have the effect of providing limited immunity to educators for ordinary

---

[5] To be clear, the Court is expressing no opinion as to whether Plaintiffs can hold the school district liable only for willful and wanton conduct but not ordinary negligence.

negligence); 745 ILL. COMP. STAT. 10/1-101.1, *et seq.* (some provisions of the Illinois Local Governmental and Governmental Employees Tort Immunity only immunize against liability for negligence, while other provisions also immunize against liability for willful and wanton conduct). The Illinois Supreme Court and Illinois Appellate Courts, as well as federal courts applying Illinois law, routinely recognize claims for willful and wanton conduct in cases against school districts and educators. *See, e.g., Doe-2 v. McLean Cnty. Unit Dist. No. 5 Bd. of Directors*, 593 F.3d 507, 514 (7th Cir. 2010); *Jain v. Butler Sch. Dist. 53*, 303 F. Supp. 3d 672, 683 (N.D. Ill. 2018); *Jane Doe-3*, 973 N.E.2d at 890.

The School District also makes the bald assertions that Plaintiffs' willful and wanton conduct claims are "legally insufficient" and "fail to evidence a viable theory of negligence sufficient to state a *prima facie* claim of negligence" (Doc. 77, pp. 3, 4). These arguments are too perfunctory and undeveloped to address. *See Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) ("Neither the district court nor this court are obliged to research and construct legal arguments for parties, especially when they are represented by counsel."); *United States v. Useni,* 516 F.3d 634, 658 (7th Cir. 2008) ("We have repeatedly warned that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.").

Accordingly, these portions of the School District's motion to dismiss are denied.

### 3. Immunity

The School District's final argument regarding Counts 1 and 2 is that these claims should be dismissed because the District is protected from liability by the Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act"),

745 ILL. COMP. STAT. 10/1-101.1, *et seq.* (Doc. 77, pp. 7–10). The Tort Immunity Act "protects local public entities and their employees from liability arising from government operations." *Monson v. City of Danville*, 115 N.E.3d 81, 88 (Ill. 2018) (citations omitted). It was enacted to "prevent the dissipation of public funds on damage awards in tort cases." *Id.* "Unless a specific immunity provision in the Act applies, a public entity is liable in tort to the same extent as a private party." *Id.* (citations omitted).

The School District claims its immunity arises under sections 2–201 and 2–109 of the Tort Immunity Act (Doc. 77, pp. 7–10). 754 ILL. COMP. STAT. 10/2-201, 2-109. These two sections, taken together, immunize a public entity from liability for "discretionary policy determinations" made by its employees. 745 ILL. COMP. STAT. 10/2-109, 10/2-201; *Smith v. Waukegan Park Dist.*, 896 N.E.2d 232, 236–37 (Ill. 2008); *Murray v. Chicago Youth Ctr.*, 864 N.E.2d 176, 186 (Ill. 2007). Specifically, section 2-201 states in pertinent part that a "public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILL. COMP. STAT. 10/2-201.[6] In turn, section 2-109 provides that "[a] local public entity," like the School District here, "is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILL. COMP. STAT. 10/2-109. "So the employer's liability depends on the employee's liability. If the employee is

---

[6] Notably, "Section 2-201 provides absolute immunity for both negligence and willful and wanton conduct." *Andrews v. Metro. Water Reclamation Dist. of Greater Chicago*, 160 N.E.3d 895, 905 (Ill. 2019).

'not liable,' then the public entity is 'not liable.'" *Hill v. Cook Cnty.*, 463 F. Supp. 3d 820, 847 (N.D. Ill. 2020).

A local public entity claiming immunity under 2-201 must establish two things: (1) that its employee "held either a position involving the determination of policy or a position involving the exercise of discretion" and (2) that "the employee engaged in *both* the determination of policy *and* the exercise of discretion when performing the act or omission from which the plaintiff's injury resulted". *Andrews*, 160 N.E.3d at 905 (emphasis in original) (citation omitted). "Policy decisions" are those that "require[e] a governmental entity to balance competing interests," such as safety, convenience, and cost, "and to make a judgment call as to what solution will best serve those interests." *Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 679 (7th Cir. 2009) (citation and quotation marks omitted); *Andrews*, 160 N.E.3d at 905. *See also Wright-Young v. Chicago State Univ.*, 153 N.E.3d 185, 202 (Ill. App. Ct. 2019) (citing cases that "stand for the proposition that 'determination of policy' can include not just the creation of a policy in the first instance, but later decisions regarding how best to implement that policy . . . ."). "Discretionary" actions are those "unique to a particular public office" and require the employee to exercise "personal deliberation and judgment in deciding whether to perform a particular act, or how and in what manner that act should be performed." *Andrews*, 160 N.E.3d at 905 (citation omitted). Whether an act or omission is classified as discretionary within the meaning of section 2-201 "escapes precise formulation and should be made on a case-by-case basis in light of the particular facts and circumstances." *Monson*, 115 N.E.3d at 91 (citations omitted).

Furthermore, immunity under the Act is an affirmative defense, *Van Meter v. Darien Park Dist.*, 799 N.E.2d 273, 280 (Ill. 2003)), and the Seventh Circuit has repeatedly cautioned that courts should generally refrain from granting motions to dismiss under Rule 12(b)(6) based on affirmative defenses. *See Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) (citations omitted); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012); *United States v. N. Tr. Co.*, 372 F.3d 886, 888 (7th Cir. 2004). Dismissal under 12(b)(6) is only appropriate when "the factual allegations in the complaint unambiguously establish all the elements of the defense" and the plaintiff has "affirmatively plead[ed] himself out of court." *Hyson*, 821 F.3d at 939 (internal quotation marks and citations omitted).[7]

As an initial matter, it's unclear to the Court whether the School District's arguments actually align with the claims set forth in the complaint. The District's argument is essentially that because the principal's actions in handling the complaints/incidents of bullying are immunized, the school district is also immunized (*see* Doc. 77, pp. 7–10). But the crux of Plaintiffs' claims seems to be more about the School District's actions in maintaining a bullying policy that did not comply with Illinois law and improperly training its employees (*see* Doc. 73, ¶¶3, 7–9, 25, 29, 36, 40–63). In other words, it seems that Plaintiffs are alleging that the School District is independently liable

---

[7] As mentioned in the Court's previous Order, the proper vehicle for dismissal at the pleadings stage on the basis of an affirmative defense is a motion for judgment on the pleadings under Rule 12(c), not a motion to dismiss under Rule 12(b)(6) (Doc. 37, pp. 4–5, n.1). *United States v. Rogers Cartage Co.*, 794 F.3d 854, 861 (7th Cir. 2015); *Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 976 (7th Cir. 2013); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 n.1 (7th Cir. 2012)

based on its own actions, rather than vicariously liable for the actions of the principal. But, to the extent that the School District's liability *is* based on the actions of an employee, it seems like it would be the employee(s) who drafted, adopted, disseminated, etc. the policy and trained district personnel. Plaintiffs, however, do not take issue with this aspect of the District's argument, so the Court will leave it be.

Accepting the School District's argument as written, the Court finds that it does not justify dismissal of Counts 1 and 2 because the complaint simply does not contain enough facts for the Court to definitively say that the alleged acts or omissions of the principal and/or the District were categorically discretionary policy determinations. For example, its unknown to the Court how many complaints about bullying were made to the school or how many incidents the school was otherwise aware of. Nor is the Court aware of how the principal responded. There are no facts as to whether the principal investigated each complaint/incident and, if so, what her investigations entailed. There are no facts as to what remedial actions, if any, were implemented in response to each complaint/incident or what consequences, if any, the offenders were received. There are no facts as to what potential solutions were available, what competing interests were considered, or what factors were weighed in reaching a decision as to the proper course of action. The Court does not even know enough to gauge whether the principal's actions or inactions were, in fact, the product of a conscious decision and not, for example, an oversight or a decision made by default. *See Andrews*, 160 N.E.3d at 907 (explaining that immunity under section 2-201 requires "evidence of a conscious decision by its employee pertaining to the conduct alleged to have caused the plaintiff's injuries"); *Monson*, 115

N.E.3d at 93 ("'[D]iscretion' connotes a conscious decision.").

Accordingly, this argument, like all of the other arguments pertaining to Counts 1 and 2 in the School District's motion to dismiss, is denied.

## C. FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

The School District's final argument is that all of Plaintiffs' claims must be dismissed because Plaintiffs were required to exhaust their administrative remedies under the Individuals with Disabilities Education Act (IDEA) but "fail[ed] to plead or evidence" that they did so (Doc. 76, pp. 8–14; Doc. 77, pp. 10–14). This argument is summarily denied for the same reasons stated in the Court's previous Order (Doc. 37, pp. 2–5). Plaintiffs were not required to anticipate and attempt to plead around the affirmative defense of exhaustion, and the amended complaint contains no information whatsoever regarding exhaustion (*see* Doc. 73). Consequently, there is no basis for granting dismissal for failure to exhaust.

## CONCLUSION

Defendant Flora Community Unit School District No. 35's motion to dismiss Plaintiffs' First Amended Complaint (Doc. 76) is **DENIED**. Defendant's motion to strike (Doc. 78) is **GRANTED**, and Plaintiffs' request for emotional distress damages in connection with their claims under the Rehabilitation Act and the Americans with Disabilities Act is **STRICKEN.**

**IT IS SO ORDERED.**

**DATED: January 20, 2023**

<u>s/ Mark A. Beatty</u>
**MARK A. BEATTY**
**United States Magistrate Judge**
